**L. Robert AARON, Plaintiff-Appellee,**

v.

**Stanley MARCOVE, and Scientific Supply Co., Inc., a Colorado corporation, Defendants-Appellants.**

**No. 83CA0343.**

Colorado Court of Appeals, Div. II.

July 26, 1984.

Isaacson, Rosenbaum & Friedman, P.C., Louis G. Isaacson, Seymour Joseph, Denver, for plaintiff-appellee.

Pred & Miller, Ronald S. Pred, Denver, for defendants-appellants.

KELLY, Judge.

Defendants, Stanley Marcove and Scientific Supply Co., Inc., appeal the trial court's judgment against them and in favor of the plaintiff, L. Robert Aaron. The judgment was based on the trial court's finding that Scientific was a tenant at will on property jointly owned by Marcove and Aaron. On appeal, Marcove and Scientific contend that the trial court erred in admitting a letter, contrary to CRE 408, which was allegedly written by Marcove during settlement negotiations. They further contend that there was insufficient evidence to support the trial court's fact-findings. We affirm.

In this action commenced in April 1980, Aaron sought to partition property held by him and Marcove as tenants in common. Partition was ordered, and the parties stipulated that it was necessary to determine the nature of Scientific's tenancy to enable the Commissioners to make findings and recommendations. Thus, a trial was held for the limited purpose of determining whether Scientific occupied the property under a long-term lease, as claimed by Marcove, or as a tenant at will, as alleged by Aaron.

On that issue, the following are uncontroverted facts or are the facts found by the trial court. Until 1977, Scientific was jointly owned and operated by Aaron and his son-in-law, Marcove. Either because of Aaron's desire to retire or because of personal differences between them, the parties undertook to disentangle their business interests, and in December 1977, Aaron sold his interest in Scientific to Marcove.

From its inception, Scientific had rented and occupied a portion of a parcel of property owned by A.M. Corporation, which had been created by Aaron and Marcove, and which was dissolved by them in October 1979. Thereafter, Aaron and Marcove owned the property as tenants in common. It is this property which the parties now seek to partition.

Until December 1977, when Aaron sold his interest in Scientific to Marcove, Scientific had occupied the property without a written lease and had made rental payments to A.M. Corporation. The evidence was conflicting on the ultimate issue whether there was a lease between the parties thereafter.

During the year June 1978 to June 1979, there were continuing negotiations between the parties concerning the terms to be included in a lease between them, and the evidence at trial was that a number of form documents were signed by one or the other of the parties during the period of negotiation. Although several form leases signed by Marcove as president of A.M. Corporation were admitted in evidence, no lease was ever produced containing both Aaron's signature and Marcove's signature on behalf of Scientific.

Aaron and Marcove each testified that on June 20, 1979, prior to the dissolution of A.M. Corporation, a meeting took place in the office of the parties' then attorney, at which their business relationships, including their leasing problems, rental arrearages allegedly owed by Scientific, previous salary payments, and tax liabilities, were discussed. On June 27, 1979, Marcove wrote a letter to the parties' attorney. Among other things, Marcove's letter stated: "With all due respect, I do not acknowledge that there is any valid lease that Scientific Supply is a party to." This statement is contrary to Marcove's position at trial, and was admitted by the trial court over the objection that it was inadmissible under CRE 408.

Marcove and Scientific contend that the trial court committed reversible error in admitting into evidence and expressly considering the quoted statement in the June

27 letter, again asserting that the admission of this letter into evidence contravenes CRE 408. We disagree.

Prior to the promulgation of CRE 408, evidence of offers to compromise made by a party during settlement negotiations was inadmissible. However, evidence that a party had conceded a fact, without reservation, during such negotiations was admissible. *Consolidated Oil & Gas, Inc. v. Roberts,* 162 Colo. 149, 425 P.2d 282 (1967).

This distinction has now been eliminated. The new rule expressly enlarges the common law exclusionary rule to preclude introduction of "evidence of conduct or statements made in compromise negotiations." *See* Fed.R.Evid. 408 (Advisory Committee's Note); 2 *J. Weinstein & M. Berger, Weinstein's Evidence* ¶ 408[03] (1982).

The threshhold question is whether the conduct or statements were made in settlement negotiations, for if they were not, the rule is inapplicable. This question is one of fact for the trial court. *See* 2 *Weinstein's Evidence, supra* at ¶¶ 408[01] and 408[03]. Upon remand by this court to the trial court for this determination, it found that the statements were not made in compromise negotiations. Since the evidence supports this finding, we are bound by the trial court's ruling. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

There is evidence here that Marcove's letter denying the existence of a long-term lease was written during continuing negotiations intended to produce a long-term lease rather than to settle the present controversy about whether such a lease exists. Thus, the letter was properly admitted.

In view of this conclusion, we need not reach the defendants' other arguments for reversal.

The judgment is affirmed.

BERMAN and BABCOCK, JJ., concur.